## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

|  |  |  |
|---|---|---|
| OSSAMA M. EL-BARBARAWI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 19 C 2520 |
| v. | ) | |
| | ) | Judge Jorge L. Alonso |
| HOME DEPOT U.S.A., INC., | ) | |
| | ) | |
| Defendant. | ) | |

### ORDER

Magistrate Judge Weisman's Report and Recommendation of April 27, 2021 [91] is adopted. Plaintiff's motion [102] to seal his response brief is granted. Intervenor Anesi, Ozmon, Rodin, Novak & Kohen, Ltd.'s motion to adjudicate attorney fees [74] is denied. Plaintiff shall file a motion to voluntarily dismiss, and submit a draft final judgment order to the Court's proposed order email inbox, by 6/30/21.

### STATEMENT

Presently before the Court is Magistrate Judge Weisman's April 27, 2021 Report and Recommendation, which concerns a dispute between plaintiff's former and current counsels over attorneys' fees.

### I.    Background

In September 2020, during the pendency of this case, Michael Teich, one of the lawyers for plaintiff, left the law firm of Anesi, Ozmon, Rodin, Novak & Kohen, Ltd. ("Anesi") for another firm, Hetherington, Karpel, Bobber, Teich, & Pippin LLC ("HKBTP"). Plaintiff elected to terminate Anesi as his counsel and follow Teich to HKBTP. Some weeks afterward (how many weeks is a matter of dispute), the parties reached a settlement in this case. The parties advised Magistrate Judge Weisman, who was supervising discovery, that they had reached a settlement and that defendant had tendered the settlement funds, leaving only "one remaining issue: an [outstanding] attorneys' lien." (Jan. 8, 2021 Minute Order, ECF No. 68.) Anesi then filed a motion as "intervenor" to "adjudicate attorney's lien/fees." The lawyers reported that they hoped to be able to settle the fee dispute, so the Court referred the matter to Magistrate Judge Weisman for a settlement conference and any other necessary proceedings.

Judge Weisman entered an order directing the parties to file a status report by February 18, 2021, to indicate whether they would like for him to hold a settlement conference or to proceed

"to resolve the issues based on the briefs." (Feb. 11, 2021 Minute Order, ECF No. 79.) The parties[1] subsequently filed a joint status report, in which they reported that they "disagree[d] on the usefulness of a mediation," so "the parties propose[d] that plaintiff's counsel file his Response by March 18, 2021 and intervenor file its Reply by April 8, 2021." (Feb. 18, 2021 Jt. Status Report, ECF No. 81.) Judge Weisman adopted the parties' proposed briefing schedule.

Anesi argued that it was entitled to recover fees under the doctrine of *quantum meruit* because it had performed extensive work in this case for over three years, dating back to before the case was filed and up until only weeks before the settlement. According to Anesi, it was Anesi's work that prepared the case for settlement, so Anesi should receive the contingency fee it had contracted for, less a reasonable amount to compensate HKBTP for the time its lawyers had spent working on the case after Mr. Teich moved there.[2] In response, HKBTP argued that the critical breakthroughs in the case came in the twelve weeks (not four-to-six, as Anesi had argued) after plaintiff became a HKBTP client. According to HKBTP, defendant's settlement offer was forty percent smaller prior to HKBTP's involvement in the case, and it only increased after HKBTP, through the vigorous efforts of Mr. Teich, won an important and hard-won victory on a motion to compel. HKBTP contended that Anesi had greatly exaggerated the amount of work it had performed prior to Mr. Teich's leaving the firm, and it had provided no evidence whatsoever—no affidavits, documentation such as time records, or other evidence of any kind—to support its *quantum meruit* claim.

Anesi attached to its reply brief two affidavits sworn by two Anesi lawyers, Patrick Blum and Brian Teven, who purported to verify the representations Anesi had made in its briefs about the time its lawyers had spent on this case. HKBTP moved to strike these affidavits. Judge Weisman granted the motion to strike for two reasons. First, submitting evidence for the first time in a reply brief is improper. Second, the affidavits purported to verify representations about work performed by Anesi lawyers *other* than the affiants, about which the affiants lacked personal knowledge, in violation of Federal Rule of Evidence 602. (*See* Apr. 20, 2021 Minute Order, ECF No. 90.)

A week later, Judge Weisman filed a report and recommendation in which he recommended denying Anesi's motion, reasoning as follows:

> Under Illinois law, "[w]hen a client fires an attorney who was retained on a contingency fee contract, that contract ceases to be effective and the attorney can no longer recover under it." *Dobbs v. Depuy Orthopedics*, 885 F.3d 455, 457 (7th Cir. 2018). "But [he] can recover a reasonable sum for services rendered based on

---

[1] By this point, defendant had been excused, so when the Court refers to "the parties" hereafter, it refers to plaintiff (as represented by HKBTP), on the one hand, and Anesi, on the other hand.

[2] The parties have filed the briefs and documents related to the fee dispute mostly under seal because the terms of the settlement are confidential. The granular details, including the dollar value of the settlement, are not critical to the Court's resolution of the dispute, so the Court will oblige the parties by granting plaintiff's pending motion to seal and leaving out of this Order the details of the settlement, as well as certain other details from which a reader might be able to infer the terms of the settlement.

*quantum meruit* ('as much as he deserves')." *Id.* at 458. To determine the value of the legal services rendered, the Court should consider "the time and labor required, the attorney's skill and standing, the nature of the cause, the novelty and difficulty of the subject matter, the attorney's degree of responsibility in managing the case, the usual and customary charge for that type of work in the community, and the benefits resulting to the client." *Will v. Nw. Univ.*, 881 N.E.2d 481, 504-05 (Ill. App. Ct. 2007). In cases in which an attorney is fired immediately before a settlement is reached, these factors "'would justify a finding that the entire contract fee is the reasonable value of services rendered.'" *Id.* at 505 (quoting *Wegner v. Arnold*, 713 N.E.2d 247, 250 (Ill. App. Ct. 1999)). "The burden of proof is on the attorney to establish the value of his services," *Thompson v. Buncik*, 961 N.E.2d 280, 283 (Ill. App. Ct. 2011), and he must do so with "evidence." *Dobbs v. DePuy Orthopedics, Inc.*, 842 F.3d 1045, 1051 (7th Cir. 2016) (vacating fee award because the district court "fail[ed] to consider evidence related to the relevant factors under Illinois law for determining reasonable attorneys' fees under *quantum meruit*"); *Bernstein & Grazian, P.C. v. Grazian & Volpe, P.C.*, 931 N.E.2d 810, 826 (Ill. App. Ct. 2010) ("[W]hile [party claiming *quantum meruit*] may not have been required to provide a line-by-line detailing of all his efforts, he did need to, at the very least, introduce some evidence specific enough to prove the reasonable value of the benefit . . . allegedly received[.]") Anesi argues that the value of the services it rendered to plaintiff for nearly three years is equivalent to the contract fee, *i.e.*, one-third of the settlement proceeds. Anesi describes those services and argues about the factors at some length. But it does not offer time records, firm rankings, affidavits, or any other evidence to support its assertions. Absent such evidence, the Court has no basis for determining the value of Anesi's services in accordance with Illinois law. Therefore, the Court recommends that the district court deny Anesi's motion.

(Apr. 27, 2021 R. & R. at 1-2, ECF No. 91.) Judge Weisman added in a footnote that there was no "concrete evidence" to show "how much time was actually spent on the case"; instead, there were nothing but "broad generalizations." (*Id.* at 2 n. 2.)

## II.    Legal Standards

"When a magistrate judge prepares a report and recommendation for a district court, the governing statute provides that the district court 'shall make a *de novo* determination' with respect to any contested matter." *Kanter v. C.I.R.,* 590 F.3d 410, 416 (7th Cir. 2009) (quoting 28 U.S.C. § 636(b)). The Court of Appeals has observed:

De novo review requires the district judge to decide the case based on an independent review of the evidence and arguments without giving any presumptive weight to the magistrate judge's conclusion. The district judge is free, and encouraged, to consider all of the available information about the case when making this independent decision. A district judge may be persuaded by the reasoning of a magistrate judge or a special master while still engaging in an independent decision-making process.

3

*Mendez v. Republic Bank,* 725 F.3d 651, 661 (7th Cir. 2013) (citing *United States v. Raddatz,* 447 U.S. 667, 676 (1980)). The district judge makes the ultimate decision to adopt, reject, or modify the magistrate judge's recommendation. *Schur v. L.A. Weight Loss Ctrs., Inc.,* 577 F.3d 752, 760 (7th Cir. 2009). The district judge may also decide to "receive further evidence" or "return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3).

## III.   Judge Weisman's Recommendation

The Court finds Judge Weisman's reasoning persuasive. As Judge Weisman explained, Anesi can recover "a reasonable sum for services rendered based on *quantum meruit,*" *Dobbs,* 885 F.3d at 458, but the burden of proof is on Anesi to demonstrate the reasonable value of its services. Anesi did not submit competent evidence sufficient to carry that burden of proof. Judge Weisman correctly relied on the Seventh Circuit's 2016 decision in *Dobbs,* 842 F.3d at 1051, on this key point. Indeed, any other recommendation would have been tantamount to recommending this Court to repeat the mistake that the district court made in *Dobbs*.

In *Dobbs,* an attorney obtained a settlement offer and advised his client to take it. The client terminated the attorney, ostensibly because the proposed settlement amount was insufficient, but then, without obtaining new representation, the client reversed course and accepted the same offer. When the attorney sought to recover fees in *quantum meruit,* the district court awarded him his full contingency fee, reasoning, apparently, that the client had "undoubtedly benefited" from the attorney's efforts because he had obtained the settlement entirely through those efforts. *Dobbs v. Depuy Orthopaedics, Inc.,* No. 15 CV 8032, 2016 WL 1555708, at \*4 (N.D. Ill. Apr. 18, 2016). On appeal, the Seventh Circuit reversed. The court explained that, when attorneys seek fees for services rendered, courts must "examine the attorneys' work to decide what a reasonable fee would be," considering numerous factors including "'the time and labor required, the attorney's skill and standing, the nature of the cause, the novelty and difficulty of the subject matter, the attorney's degree of responsibility in managing the case, the usual and customary charge for that type of work in the community, and the benefits resulting to the client.'" *Dobbs,* 842 F.3d at 1049 (quoting *Will,* 881 N.E. 2d at 504-05). The Seventh Circuit reasoned that the district court had "listed" all of these factors, but it had "not consider[ed] *evidence* related to" them, leaving "unaccounted for" a "whole host of relevant factors," including "how many hours" the attorney spent on the case. *Dobbs,* 842 F.3d at 1050 (emphasis added). Further, the Seventh Circuit explained, the district court had incorrectly applied the rule that when "'an attorney who has done much work is fired immediately before a settlement is reached, the factors involved in determining a reasonable fee would justify a finding that the entire contract fee is the reasonable value of the services rendered.'" *Id.* at 1049 (quoting *DeLapaz v. SelectBuild Const., Inc.*, 917 N.E.2d 93, 97 (Ill. App. Ct. 2009)). Although this is "a correct articulation of Illinois law," courts are not to apply the rule reflexively whenever a client fires his attorney shortly before settling; the rule only applies "when the attorney did 'much work,' which still requires analyzing the factors used to determine a reasonable fee under *quantum meruit.*" *Dobbs,* 842 F.3d at 1050. The district court had merely "recited" the attorney's claim that he had done substantial work on the case, without addressing evidence of how many hours he had worked on the case, how difficult or novel the case was, how much an attorney would ordinarily charge for this work, or what counsel's skill and standing in the community were. Therefore, the court had abused its discretion.

4

In its motion, Anesi has similarly asked this Court to reflexively award Anesi its contingency fee because plaintiff changed counsel shortly before settling—which, while the cases are not identical, would be essentially to repeat the *Dobbs* district court's mistake. Instead, this Court must consider whether the evidence supports the reasonableness of that award, in the full context of all the relevant facts and circumstances, by analyzing all the factors used to determine the reasonableness of an attorney's fee under *quantum meruit*. *See Dobbs*, 842 F.3d at 1049-50. But, as Judge Weisman explained in his report and recommendation, Anesi did not provide the evidence needed to analyze those factors. There were no "time records, firm rankings, affidavits, or any other evidence" to support Anesi's assertions. (Apr. 27, 2021 R. & R. at 2.) Without evidence to rely on, Judge Weisman's recommendation to deny Anesi's motion was all but inevitable.

Anesi offers no real explanation for why it never submitted competent evidence in support of its motion for fees. The closest it comes is to argue that, while its motion sought the full contract contingency fee, it also sought, in the alternative, "time for leave to file any and all evidence/affidavits in support of the *quantum meruit* fee." (Anesi Mot. to Adjudicate Attorney's Lien/Fees at 11, ECF No. 74.) But this is really no explanation at all. This Court routinely adjudicates motions for attorneys' fees, and the movants routinely attach evidence such as time records, affidavits describing the movants' efforts and experience as counsel in similar cases, and letters from other practitioners establishing the reasonableness of the movants' rates. In this case, the governing law required Anesi to support its motion with such evidence, and in the Court's experience, when litigants submit motions that depend on supporting evidence, they submit the evidence with the motion; they do not wait for the Court to tell them whether it really wants to see the evidence it needs to decide the motion. Thus, to the extent that Anesi's position is that it was given no opportunity to submit any additional evidence, the Court disagrees; the time to submit the evidence was with the original motion.

Anesi argues that, even if its failure to attach supporting evidence to its motion was a mistake, Judge Weisman should have forgiven this mistake and sought additional evidence from the parties in order to resolve the dispute on the merits. But Anesi had the burden of proof, and the Court finds nothing to reproach in Judge Weisman's decision to proceed without stopping to warn Anesi of what it should already have known: that it needed to support its motion with evidence. Had the judge denied the motion summarily, this Court might view the matter differently, but that is not what happened. Importantly, even after filing its motion, Anesi had another opportunity to ask to submit the evidence it needed before HKBTP filed its response brief, but it omitted to do so. In the joint status report filed pursuant to Judge Weisman's order directing the parties to inform him whether they wanted him to hold a settlement conference or decide the matter on the briefs, the parties simply proposed dates for a response brief and a reply. Anesi could have, but did not, propose to submit additional evidence. Instead, Anesi made no effort to submit evidence in support of its motion until it submitted its reply brief, which is too late, as Judge Weisman explained in granting Anesi's motion to strike the initial round of affidavits. (*See* Apr. 20, 2021 Minute Order, ECF No. 90 (citing *Thompson v. AT&T Servs., Inc.*, No. 17 C 3607, 2018 WL 4567714, at *6 (N.D. Ill. Sept. 24, 2018) and *Gold v. Wolpert*, 876 F.2d 1327, 1331 n. 6 (7th Cir. 1989)).) The Court is persuaded that Judge Weisman dealt with the matter correctly.

## IV.    New Evidence

Anesi now attaches to its Objections to Judge Weisman's report and recommendation certain evidence that it says it would have provided if Judge Weisman had asked for it. This evidence consists of three affidavits, in which three Anesi lawyers describe working an approximate number of hours on this case, alongside Mr. Teich, between 2017 and 2020. (*See* Affs. of Brian Teven, Patrick Blum, and Linda Ciharan, ECF Nos. 100-2, 100-3, and 100-4.) In addition to estimating the time he personally spent working on the case, Mr. Blum also attempts to estimate the number of hours that Mr. Teich spent on a few tasks, including certain depositions. The affiants also describe their skill and experience in the field. Anesi asks the Court to consider this evidence in sustaining its Objections to Judge Weisman's report and recommendation. Additionally, Anesi suggested at a May 21, 2021 hearing that the Court should hold an evidentiary hearing, at which Anesi might question Mr. Teich in order to learn how many hours he spent on this case while employed by Anesi.

But it is too late to inject new evidence into this case now. While this Court has discretion to permit Anesi to submit new evidence, it also has discretion to reject any new evidence, and it has previously stated that "a party generally cannot raise new arguments and evidence that were not presented to the magistrate judge." *Left Field Media LLC v. City of Chicago*, 137 F. Supp. 3d 1127, 1139 n. 12 (N.D. Ill. 2015) (citing *United States v. Melgar*, 227 F.3d 1038, 1040 (7th Cir. 2000) and *Goffman v. Gross*, 59 F.3d 668, 671 (7th Cir. 1995)). This is for good reason. A district court's discretion to refuse to consider new evidence not presented to the magistrate judge makes "prudential sense" when the new evidence could have been presented earlier, as the Ninth Circuit has explained:

> The magistrate judge system was designed to alleviate the workload of district courts. To require a district court to consider evidence not previously presented to the magistrate judge would effectively nullify the magistrate judge's consideration of the matter and would not help to relieve the workload of the district court. Systemic efficiencies would be frustrated and the magistrate judge's role reduced to that of a mere dress rehearser if a party were allowed to feint and weave at the initial hearing, and save its knockout punch for the second round. Equally important, requiring the district court to hear evidence not previously presented to the magistrate judge might encourage sandbagging. It would be fundamentally unfair to permit a litigant to set its case in motion before the magistrate, wait to see which way the wind was blowing, and—having received an unfavorable recommendation—shift gears before the district judge.

*United States v. Howell,* 231 F.3d 615, 622 (9th Cir. 2000) (citing *Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985, 990-91 (1st Cir. 1988)) (internal citations, quotation marks, and alterations omitted); *see also Ridenour v. Boehringer Ingelheim Pharms., Inc.*, 679 F.3d 1062, 1067 (8th Cir. 2012) ("When a magistrate judge is hearing a matter pursuant to his or her limited authority to make a recommended disposition, a claimant must present all his claims squarely to the magistrate judge, that is, the first adversarial forum, to preserve them for review. . . . Just as parties cannot present arguments to the appellate court that they did not raise before the district court, *parties must take before the magistrate, not only their best shot but all of their*

6

*shots*.") (internal quotation marks and alterations omitted) (emphasis added). In this case, Anesi could have presented to Judge Weisman the evidence attached to its Objections and informed him that it believed an evidentiary hearing was necessary, but it "failed to do so," and for no good reason. *See Left Field*, 137 F. Supp. 3d at 1139 n. 12. The Court is not inclined to receive new evidence now, as it would defeat the purpose of referring a matter to the magistrate judge.

Even if the Court were inclined to consider the evidence Anesi now tenders, it doubts it would make any difference. The only relief Anesi seeks is either, on the one hand, its full contract contingency fee, or, on the other hand, leave to present additional evidence to establish the reasonableness of its fee. (*See* Anesi Mot. to Adjudicate Attorney's Lien/Fees at 11; Intervenor's Rule 72 Objections at 13, ECF No. 100.) It never calculates and requests an alternative or fallback amount of fees it seeks; its position seems to be that it should either get the full contingency fee or have a further opportunity to prove that it is entitled to it.

The affidavits fall far short of demonstrating Anesi's entitlement to the full contingency fee, and the Court fails to see why it should expect Anesi to be able to so demonstrate in continued proceedings. The value of the hours the affidavits describe is only a little more than a quarter of the contract contingency fee, and the affidavits are not even competent evidence of all of those hours worked. Although Mr. Blum attempts to estimate the amount of time Mr. Teich spent on certain tasks, none of the affiants makes any attempt to estimate the total amount of time that Mr. Teich spent on the case during his employment with Anesi. Indeed, Anesi admits in its Objections, as it admitted in open court, that it cannot offer any such estimate, even a rough one. And the Court puts aside most of those hours that Mr. Blum purports to claim that Mr. Teich spent on this case because, as Judge Weisman explained, Mr. Blum lacks personal knowledge sufficient to testify to what Mr. Teich did. Once those hours are subtracted, the value of the remaining hours, calculated at the Anesi lawyers' normal hourly rates, adds up to less than a quarter of the contract contingency fee. Anesi does not explain, and the Court does not see, why the contract contingency fee would be a reasonable fee for such a relatively small number of hours worked. While Anesi states that its lawyers are skilled, knowledgeable, and experienced—and the Court does not doubt it—the Court fails to see what was so difficult about the work these lawyers did, or why it contributed so greatly to plaintiff's success, that such a substantial multiplier is reasonable here. Importantly, HKBTP vigorously disputes Anesi's position that plaintiff's settlement was obtained primarily through Anesi's efforts, contending instead that the breakthrough came when HKBTP won a difficult motion to compel and earned a much higher settlement offer than defendant had tendered to that point. In arguing otherwise, Anesi focuses on its longevity on this case. But the fact that Anesi represented plaintiff for a longer period of time than HKBTP matters less than the hours it spent on the case and the results it achieved. It has not begun to prove that either the hours or the results justify the massive fee it seeks, despite a number of opportunities to submit the evidence that would do so, if it has any.

Thus, these affidavits do not demonstrate that the full contract contingency fee is a reasonable fee for the hours Anesi put into this case, nor do they suggest that Anesi could prove its entitlement to the full contract fee in continued proceedings. If anything, they tend to suggest that Anesi *lacks* the documentation necessary to prove that its lawyers spent an amount of time on this case, or achieved a level of success for its client, that would justify payment of the full contingency fee. Had Anesi staked out some sort of fallback position by, for example, asking the

Court to award it the value of the hours Blum, Teven, and Ciharan describe working in their affidavits, the Court might have entertained the request, but instead Anesi took an aggressive all-or-nothing approach to its fees motion. Now, having failed to demonstrate that it is entitled to all of the contingency fee, it cannot complain if it is left with nothing.

As for Anesi's suggestion that the Court should hold an evidentiary hearing so that Anesi can inquire of Mr. Teich how much time he spent on this case while employed by Anesi, it is a non-starter. This would essentially reverse the burden of proof. It is Anesi's burden to prove its entitlement to the fees it seeks, and if Anesi failed to keep adequate records of its attorneys' time while Mr. Teich was employed there, that is Anesi's own fault. *See Nationwide Advantage Mortg. Co. v. GSF Mortg. Corp.*, 827 F.3d 577, 579 (7th Cir. 2016) (affirming ruling against a "sophisticated enterprise" asserting commercial claims based on "its own inexplicable blunder for which it has only itself to blame").

Further, Anesi did not assert from the beginning that it needed an evidentiary hearing to prove its claim; instead, it asserted that it was entitled to the full contingency fee based on the timeline alone, or that it could "file any and all evidence/affidavits," if necessary. To allow Anesi more opportunities to substantiate its motion now would only raise the prospect of "endless" briefing, *Gold*, 876 F.2d at 1331 n. 6, and reward Anesi for failing to take "not only [its] best shot but all of [its] shots" at once, *Ridenour*, 679 F.3d at 1067. As the Ninth Circuit has explained, it would be "fundamentally unfair to permit a litigant to set its case in motion before the magistrate, wait to see which way the wind was blowing, and—having received an unfavorable recommendation—shift gears before the district judge." *Howell*, 231 F.3d at 622. But that is what Anesi asks to do here, having tried to take a shortcut and lost. The Court is not persuaded that any unfairness to Anesi outweighs any unfairness to HKBTP from these unnecessarily protracted proceedings.

The Court adopts Judge Weisman's report and recommendation and denies Anesi's motion for fees. Plaintiff shall move to voluntarily dismiss this case on terms consistent with his settlement agreement by the above deadline, and the Court will terminate this case.

**SO ORDERED.**                                     **ENTERED: June 23, 2021**

**HON. JORGE ALONSO**
**United States District Judge**